## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2019, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Matthew S. Koressel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of W.Z., K.Z., and Z.Z. (Minor Children) and T.Z. (Mother)

T.Z. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

February 26, 2019

Court of Appeals Case No. 18A-JT-2264

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1805-JT-68
79D03-1805-JT-69
79D03-1805-JT-70

**Vaidik, Chief Judge.**

# Case Summary

[1] T.Z. ("Mother") appeals the termination of her parental rights to her three children. We affirm.

# Facts and Procedural History

[2] Mother and R.Z. ("Father") are the biological parents of W.Z., born in June 2003; K.Z., born in August 2007; and Z.Z., born in September 2009 (collectively, "Children"). Father does not participate in this appeal. The facts that follow are taken primarily from the trial court's findings of fact, none of which Mother challenges on appeal.[1]

[3] Mother and Father (collectively, "Parents") first became involved with the Department of Child Services (DCS) in May 2008. Father was incarcerated when Mother was found intoxicated, walking in the rain while carrying eight-month-old K.Z. Mother was arrested for neglect of a dependent. W.Z. and K.Z. were removed from Mother's care, and DCS filed petitions alleging that W.Z. and K.Z. were Children in Need of Services (CHINS) (Z.Z. was not born yet). In September 2009, W.Z. and K.Z. reunited with Parents, and DCS dismissed the CHINS case.

---

[1] Because Mother does not challenge the trial court's findings of fact, we accept them as true. *See Maldem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

[4]     Seven years later, in February 2016, DCS received multiple reports that Children were being neglected by Mother, Father, and Father's mother ("Grandmother"). DCS investigated and found that Father and Children were living with Grandmother and that Father was inhaling various aerosol sprays. Mother could not be located. DCS filed petitions alleging that Children were CHINS, and Children remained in Father's care on the condition that Father continued living with Grandmother. In May, DCS received a report that Father was still abusing aerosols. Father was ordered to vacate Grandmother's house so that Children could remain with Grandmother. Later that month, the trial court held a fact-finding hearing on the CHINS petitions, and Father admitted that he inhaled aerosols in front of Children. Mother appeared at the hearing in the custody of the Tippecanoe County Sheriff's Department and admitted that Children were CHINS. After the hearing, the trial court determined that Children were CHINS and placed them with Grandmother. Parents were offered numerous services, including: substance-abuse assessments and treatment, mental-health assessments, and drug screens. Parents were also to have supervised parenting time with Children. In December, Children were removed from Grandmother after DCS discovered that Grandmother was allowing Parents to have unsupervised access to Children. Initially, Children were placed in three separate foster homes but later were placed together in a pre-adoptive foster home as a sibling group.

[5]     In March 2017, DCS filed petitions to terminate Parents' parental rights to Children, and the trial court set a fact-finding hearing for June 2017. Father

appeared at the hearing. Mother failed to appear, and the trial court entered a default judgment against her. After the hearing, the trial court issued an order in September 2017 terminating Parents' parental rights to Children. Mother appealed the termination order, arguing that her due-process rights were violated because she did not receive notice of the termination fact-finding hearing.[2] DCS agreed and asked this Court to remand Mother's case. In March 2018, we remanded the case.

[6] In May 2018, the trial court held another permanency hearing, and DCS reaffirmed its plan for termination of Mother's parental rights and adoption. Thereafter, DCS filed new petitions to terminate Mother's parental rights to Children. In July, the trial court held a fact-finding hearing on the new termination petitions. At the time, Mother was in prison and appeared by phone. Mother had been arrested in March 2016 for dealing in methamphetamine and later pled guilty to Level 2 felony conspiracy to commit dealing in methamphetamine. Mother was sentenced to eleven years with seven years to be executed and four years suspended. Mother's first four years are executed at the Indiana Department of Correction (DOC) followed by three years executed through community corrections. *See* Ex. Vol. I p. 162. Then Mother will be on supervised probation during the four-year suspended portion of her sentence. *See id*. At the hearing, Mother testified that she had been at the

---

[2] Father did not participate in the first appeal, and the record shows that Father's parental rights were terminated on September 22, 2017.

DOC just under a year and expected to be released in February 2020. Mother said that she was hoping to participate in a "rehab while incarcerated program" that "upon completion" may allow her to be released early but alleged that she could not start that program until "around Christmas time." Tr. p. 24. Mother testified that she was not allowed to participate in services while in prison because she was "purposefully incarcerated." *Id*. at 24. Mother said that she was "all about [her] sobriety for the first time in [her] life," and that she believed it is in the best interests of Children "to always have contact with [her]." *Id*. at 25-26.

[7]     Children's Court Appointed Special Advocate (CASA), Thomas Brennan, recommended that Mother's parental rights to Children be terminated. CASA Brennan testified that Mother "has had virtually no true contact with [Children]," that the Children "have never quizzed [him] about [Mother]," and that "[f]or all intents and purposes, [Mother] is out of [Children's] lives." *Id*. at 13. CASA Brennan said that he believed terminating Mother's parental rights is in the best interests of Children. DCS supervisor Ambyr Wade testified that she had been the Family Case Manager on the case and recommended that Mother's parental rights to Children be terminated. Wade stated that Mother "has an extensive history of substance use" and did not participate in any services that DCS offered her throughout the case. *Id*. at 18. Wade said that since 2016, Mother "has had one (1) contact" with Children. *Id*. Regarding DCS's plan for Children, Wade testified that Children's current foster parents "are very much wanting to adopt" all three children and that Children "have

expressed unanimously that they want to be adopted." *Id*. at 20-21. In September 2018, the trial court issued an order terminating Mother's parental rights to Children. The order provides, in relevant part:

**FINDINGS OF FACT**

*****

12. Mother has a long-standing history of substance abuse, criminal activity, and resulting instability that continues today.

*****

15. Mother had a single visit with [Children] over the entirety of the second CHINS case.

16. When not incarcerated, Mother made absolutely no efforts toward reunification and essentially abandoned [Children].

17. [CASA Brennan] supports termination of parental rights in the best interests of [Children]. [CASA Brennan] noted that Mother was incarcerated throughout much of the [second] CHINS proceeding. Mother attempted unauthorized contact with [Children] when not incarcerated. CASA reports [Children] are happy in the concurrent foster placement. [Children] have positive attitudes and have adjusted to life without their biological parents.

**CONCLUSIONS OF LAW**

1. There is a reasonable probability the conditions that resulted in removal of [Children] from the care of the parents or the

reasons for continued placement outside the home will not be remedied. There is no reasonable probability Mother will be able to maintain stability refraining from illegal substances to care and provide adequately for [Children].

*****

4. For the foregoing reasons, it is in the best interests of [Children] that the parental rights of [Mother] be terminated.

Appellant's App. Vol. II pp. 29-30.

[8] Mother now appeals.

# Discussion and Decision

[9] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[10] A petition to terminate parental rights must allege, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[11] On appeal, Mother only challenges the trial court's conclusion that termination is in Children's best interests. To determine what is in the child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the trial court must subordinate the interests of the parent to those of the child. *Id*. We have previously held that recommendations by both the DCS manager and CASA to terminate parental rights, in addition to evidence that the conditions resulting in

removal will not be remedied, is clear and convincing evidence that termination is in the best interests of the child. *Id.* at 1158-59.

[12] Mother was incarcerated at the time of the termination hearing and argues that "a parent's incarceration, alone, is an insufficient basis for termination of a parent's relationship with his or her child." Appellant's Br. p. 15. Mother states that she loves Children and "is concerned with the impact on them if [Children] never have contact with her." *Id.* Mother is correct as a general principle that parental rights cannot be terminated based solely on a parent's incarceration. Here, however, Mother's incarceration was one of many reasons that the trial court concluded termination is in Children's best interests. First, Mother does not dispute the trial court's conclusion that the conditions that resulted in removal of Children will not be remedied because there is no reasonable probability that Mother will be able to maintain stability refraining from illegal substances to care and provide for Children. *See* Appellant's App. Vol. II p. 30. Next, both CASA Brennan and DCS supervisor Wade testified that termination of Mother's parental rights is in Children's best interests. *See* Tr. pp. 14, 21. Furthermore, the trial court found that when Mother was not incarcerated, she "made absolutely no efforts towards reunification and essentially abandoned" Children. Appellant's App. Vol. II p. 30 (Finding 15). Meanwhile, the trial court found that Children were happy in their pre-adoptive foster placement and have adjusted to life without Mother. *See id.* (Finding 17); *see also K.T.K.*, 989 N.E.2d at 1230 (finding that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing

secure, stable, long-term, continuous relationships."). Therefore, the trial court did not terminate Mother's parental rights based solely on her incarceration but based on the recommendations of both CASA Brennan and DCS supervisor Wade to terminate Mother's parental rights and the evidence showing that the conditions resulting in removal will not be remedied. Accordingly, the trial court did not err when it concluded that termination is in Children's best interests.

[13] Affirmed.

Mathias, J., and Crone, J., concur.